UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SIMON A. SANCHEZ,

        Petitioner,

v.                                Case No. 3:16-cv-1400-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

## ORDER

### I. Status

Petitioner Simon Sanchez, an inmate of the Florida penal system, initiated this action on November 2, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Sanchez challenges a 2009 state court (Duval County, Florida) judgment of conviction for attempted armed robbery. Sanchez raises twelve grounds for relief. See Petition at 6-48.[2] Respondents have submitted a memorandum in opposition to the Petition. See Response (Response; Doc. 23) with exhibits (Resp. Ex.). Sanchez submitted a brief in reply (Reply; Doc. 30) with exhibits (Reply Ex.). This case is ripe for review.

### II. Relevant Procedural History

On April 10, 2008, the State of Florida (State) charged Sanchez by way of an amended Information with two counts of armed robbery (counts one and two), robbery

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

(count three), and attempted armed robbery (count four). Resp. Ex. A at 12-13. On February 23, 2009, Sanchez, through counsel, moved to sever the trials of all four counts. Id. at 48. The circuit court granted the motion to sever the same day. Id. at 49. Sanchez proceeded to a jury trial on count four, at the conclusion of which the jury found him guilty as charged, with a specific finding that Sanchez actually carried a deadly weapon during the commission of the offense. Id. at 102. On May 18, 2009, the circuit court adjudicated Sanchez a habitual felony offender (HFO) and sentenced him to a term of incarceration of thirty years in prison. Id. at 126-31.

Sanchez initiated a direct appeal of his judgment and conviction on June 9, 2009. Id. at 135. With the assistance of counsel, he filed an initial brief raising the following claims: (1) the circuit court erred in overruling a defense objection that the State's cross-examination of Sanchez shifted the burden of proof; (2) the circuit court erred in denying the motions for judgment of acquittal; and (3) the circuit court fundamentally erred in reading an incomplete, misleading, and confusing jury instruction on deadly weapons. Resp. Ex. E at 9-23. The State filed an answer brief. Resp. Ex. F. On June 10, 2010, the First District Court of Appeal (First DCA) per curiam affirmed Sanchez's conviction and sentence and issued the Mandate on June 28, 2010. Resp. Ex. G. Sanchez filed a pro se motion for rehearing, which the First DCA struck as unauthorized. Id.

On June 13, 2011, Sanchez filed a pro se petition for writ of habeas corpus with the First DCA. Resp. Ex. H. In the petition for writ of habeas corpus, Sanchez alleged his appellate counsel was ineffective because counsel: (1) failed to raise a fundamental error argument concerning his HFO designation; (2) failed to raise an argument that the circuit court violated Sanchez's right to self-representation; (3) failed to a raise a fundamental

error argument concerning improper prosecutorial comments; and (4) failed to obtain records needed for his direct appeal. Id. On July 8, 2011, the First DCA denied the petition for writ of habeas corpus on the merits. Resp. Ex. I.

Sanchez filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion) on July 27, 2011. Resp. Ex. L. Sanchez raised the following grounds for relief, alleging his counsel was ineffective for failing to: (1) properly object to his HFO sentence; (2) protect his speedy trial rights; (3) adopt and refile his pro se motion to suppress; (4) challenge the victim's out-of-court identification; (5) object to the prosecutor's improper comments; (6) adequately argue a motion for judgment of acquittal; (7) object to a defective jury instruction; (8) adequately investigate and prepare a misidentification defense; (9) impeach witnesses; (10) obtain an expert witness; and (11) withdraw due to a conflict of interest. Id. at 4-32. On July 2, 2012, Sanchez filed an amended motion for postconviction relief pursuant to Rule 3.850 (Amended Rule 3.850 Motion). Resp. Ex. N. In the Amended Rule 3.850 Motion, Sanchez raised the same eleven claims as he did in his Rule 3.850 Motion and added two additional claims of ineffective assistance of counsel. Id. As ground twelve, he alleged that his counsel failed to file a proper and timely motion for new trial, and as ground thirteen, he contended that his counsel failed to properly file a motion in limine. Id. at 30-34. On August 3, 2015, the circuit court struck grounds four, ten, and eleven of the Amended Rule 3.850 Motion and gave Sanchez leave to amend. Resp. Ex. X. Sanchez did not amend these grounds. Resp. Exs. J; Y at 6. On December 14, 2015, the circuit court denied the Amended Rule 3.850 Motion. Resp. Ex. Y. On June 1, 2016, the First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. DD at 1. Sanchez

moved for rehearing, which the First DCA denied on July 21, 2016. Id. at 2-8. The First

DCA issued the Mandate on August 8, 2016. Id. at 10.

On February 27, 2016, Sanchez filed a motion to correct an illegal sentence

pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion). Resp.

Ex. EE. In his Rule 3.800(a) Motion, Sanchez alleged his HFO sentence was

unconstitutional. Id. The circuit court denied the Rule 3.800(a) Motion on July 1, 2017.

Resp. Ex. FF. On June 13, 2018, the First DCA per curiam affirmed the denial without a

written opinion. Resp. Ex. GG; Sanchez v. State, 249 So. 3d 601 (Fla. 1st DCA 2018).

### III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. See 28 U.S.C.

§ 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the

need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d

1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a

federal court must consider whether such a hearing could enable an applicant to prove

the petition's factual allegations, which, if true, would entitle the applicant to federal

habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't

of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017).

"It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing."

Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [Sanchez's] claim[s] without

further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

**B. Exhaustion/Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).
[6] Murray v. Carrier, 477 U.S. 478 (1986).

> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." Id. at
> 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive consideration
> on the merits of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional violation has
> probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in
> the absence of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception
> is exceedingly narrow in scope," however, and requires proof
> of actual innocence, not just legal innocence. Johnson v.
> Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

Sanchez alleges that his appellate counsel was ineffective for failing to raise an argument on direct appeal that the circuit court fundamentally erred when it refused to allow him to represent himself during a suppression hearing. Petition at 6-8. According to Sanchez, the circuit court had previously found him capable of representing himself and allowed him to proceed pro se. Id. at 7. Sanchez filed a pro se motion to suppress and the circuit court scheduled an evidentiary hearing on the motion. Id. However, after scheduling the hearing, the circuit "struck Petitioner's self representation and appointed the same already dismissed counsel (James F. Nolan) whom petitioner already had several conflicting issues with." Id. At the suppression hearing, Sanchez contends that his trial counsel refused to argue Sanchez's pro se motion to suppress, stating to Sanchez "that he found no merit on petitioner's motion." Id. At that point, Sanchez requested the circuit court to allow him to represent himself, but the circuit court denied the request ruling Sanchez had difficulty with English and only had a sixth-grade education. Id. Sanchez notes that after his trial, the circuit court allowed Sanchez to represent himself and found Sanchez's education, language, legal understanding, and writing skills made him competent to proceed pro se. Id. Sanchez claims he was prejudiced because the circuit court's erroneous ruling finding him incompetent to represent himself prohibited him from testing the legality of the evidence he sought to suppress. Id.

On January 27, 2009, Sanchez represented himself at a pre-trial hearing. Resp. Ex. B at 162-79. During the hearing, the circuit court inquired whether Sanchez wanted to have counsel reappointed. Id. at 173. Initially, Sanchez stated "Yes. Only if it's not the

same lawyer." Id. After hearing Sanchez's complaints about his former attorney, who was not Sanchez's first attorney, the circuit court determined that nothing in the record warranted appointing a different counsel and advised Sanchez that it could allow him to proceed pro se or reappoint his former attorney. Id. at 173-78. In response, Sanchez stated "I don't know – I'm not sure about it right now, to tell you the truth." Id. at 177. The circuit court then reappointed his former counsel and advised Sanchez that they would reassess the situation at the next hearing date, and Sanchez agreed. Id. at 177-78.

On February 9, 2009, the circuit court scheduled a hearing to determine whether counsel would adopt Sanchez's pro se motions to suppress and sever. Id. at 210-22. At the hearing, counsel represented that he would not adopt the motion to suppress Sanchez's confession because after listening to the interview he determined Sanchez never confessed. Id. at 212. As to Sanchez's motion to suppress evidence, counsel again refrained from adopting it because he did not think it was worthy of a motion to suppress because the stop was legally sufficient. Id. at 212-13. After hearing from his counsel, Sanchez complained about his attorney's failure to adopt his motions to suppress. Id. at 214-21. The circuit court found Sanchez had not shown good cause to remove counsel and advised Sanchez he may hire his own attorney if he so desired. Id. at 217, 221. Notably, Sanchez never stated at this hearing that he wanted to represent himself. Id. at 210-22.

On March 26, 2009, the circuit court held a Nelson[7] hearing on Sanchez's motion to dismiss his counsel. Id. at 180-208. Sanchez complained, among other things, about his counsel's failure to adopt his motion to suppress; however, counsel explained he did

_____

[7] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).

not adopt it because he felt it was not warranted. Id. at 190-91. After hearing counsel's explanations, the circuit court determined that counsel was not deficient and declined to dismiss him. Id. at 192. Sanchez thereafter moved to represent himself and the circuit court conducted an extensive Faretta[8] inquiry. Id. at 195-207. After the inquiry, the following exchange occurred between Sanchez and the circuit court:

> THE COURT:  Do you have any questions that you need to ask me before I determine whether or not you can represent yourself?
>
> THE DEFENDANT:  I don't know. All right. I just want to let you know I'm very – it's very disadvantaged [sic] against me right now, so I don't know if I want to represent myself.
>
> THE COURT:  I'm sorry. You do not know whether or not you want to represent yourself?
>
> THE DEFENDANT:  Right after you read me all this, I was like thinking about it, you know, they got – they got it very bad on me right now because language, I don't go to the law library no more, like I told you. I'm very disadvantaged basically in representing myself.
>
> THE COURT:  I can't understand what you're saying.
>
> THE DEFENDANT:  I'm not in a good position to represent myself, basically. I've been thinking about it.
>
> THE COURT:  That's fine. Based on that statement, I will find that you're not in a position to represent yourself and will proceed with Mr. Nolan and proceed to trial on Monday.

Id. at 206-07.

The record reflects that Sanchez's appellate counsel did not raise on direct appeal the issue of whether the circuit court violated his right to represent himself. Resp. Ex. E. In his petition for writ of habeas corpus filed with the First DCA, Sanchez argued his

---

[8] Faretta v. California, 422 U.S. 806 (1975).

appellate counsel was ineffective for failing to raise this issue in the initial brief. Resp. Ex. H at 10-12. The First DCA denied the petition for writ of habeas corpus on the merits. Resp. Ex. I.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Sanchez's claim in Ground One is without merit. Under Florida law, "[b]efore the trial court can make a decision whether to permit the defendant to proceed pro se, the defendant's request for self-representation must be unequivocal." Tennis v. State, 997 So. 2d 375, 378 (Fla. 2008) (citing State v. Craft, 685 So. 2d 1292, 1295 (Fla. 1996)). Here, Sanchez never made an unequivocal request to proceed pro se at the February 9, 2009 hearing and the circuit court did not conduct a Faretta inquiry; instead focusing solely on whether or not counsel should be discharged. Resp. Ex. B at 210-22. Accordingly, the circuit court did not err in failing to hold a Faretta hearing. Tennis, 997 So. 2d at 378. Notably, the circuit court did conduct a Faretta inquiry at the March 26,

---

[9] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

2009 hearing, with Sanchez ultimately deciding not to proceed pro se. Resp. Ex. B at 195-207. Appellate counsel is not ineffective for failing to raise a claim that would not have succeeded on appeal. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Therefore, Sanchez's claim in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Sanchez avers that the circuit court erred in dismissing as legally insufficient grounds four, ten, and eleven of his Amended Rule 3.850 Motion. Petition at 10-12. He asserts he properly amended these claims prior to the circuit court denying his Amended Rule 3.850 Motion, but the circuit court ignored his amendments. Id. As state procedural rules control a movant's ability to amend a Rule 3.850 Motion, this Court cannot address the propriety of that action in federal habeas proceedings. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Accordingly, the relief Sanchez seeks in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Sanchez contends that his trial counsel was ineffective because he failed to object to his HFO sentence. Petition at 13-15. More specifically, he contends that one of the prior convictions the State relied on in support of the HFO sentence did not qualify as a predicate offense because his "conviction [had] been withheld and his probationary period [had] been completed before the instant offense [had] been committed . . . ." Id. at 14.

Sanchez raised a similar claim as ground one of his Amended Rule 3.850 Motion. Resp. Ex. N at 4-5. The circuit court denied the claim, stating in pertinent part:

> The State filed with the Court certified copies of two prior felony convictions from Duval County. In case number 2007-CF-16906, for the third degree felony of grand theft, the Court ordered that adjudication of guilt be withheld, and Defendant was placed on unsupervised probation for thirty days on December 3, 2007, with 24 days credit for time served. In the instant motion, Defendant states that he completed probation on that conviction before he committed the present offense.
>
> A defendant qualifies as HFO if he or she committed the current offense within five years of the date of conviction of the last prior felony. § 775.084(1)(a)2.b., Fla. Stat. (2008); Whitmore v. State, 147 So. 3d 24, 25 (Fla. 1st DCA 2013); reh'g denied (Sept. 19, 2013), review denied, 134 So. 3d 452 (Fla. 2014). Section 775.084(2), Florida Statutes (2008) states that: "[f]or purposes of this section, the placing of a person on probation or community control without an adjudication of guilt shall be treated as a prior conviction." Therefore, Defendant was properly qualified as HFO based upon the two prior felony convictions, including his conviction where adjudication was withheld, plus the current offense, which occurred on February 21, 2008.
>
> Further, Defendant can demonstrate no deficient performance by Mr. Nolan because during Defendant's first sentencing hearing on May 15, 2009, Mr. Nolan objected to the HFO designation based upon the reasoning presented in

Ground One. The Court explained on the record that section 775.084(2), Florida Statutes (2008), allows for HFO status to be based upon a felony where adjudication was withheld.

The Court finds no deficient performance by Mr. Nolan, and therefore, summarily denies Ground One.

Resp. Ex. Y at 6-7 (record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, this claim fails as a matter of law. Pursuant to section 775.084(2), Florida Statutes (2008), for purposes of HFO sentencing, "the placing of a person on probation or community control without an adjudication of guilt shall be treated as a prior conviction." See also Whitmore v. State, 147 So. 3d 24, 24-25 (Fla. 1st DCA 2013) (holding defendant's prior conviction for grand theft was a qualifying offense for purposes of HFO sentencing even though adjudication of guilt on the grand theft charge was withheld and defendant had completed the sentence before committing the offense for which he was currently being sentenced). Accordingly, counsel cannot be deemed ineffective for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender,

16 F.3d at 1573. Moreover, the record reflects that counsel objected to Sanchez being classified as a HFO because adjudication was withheld on the grand theft charge; however, the circuit court overruled the objection based on section 775.084(2). Resp. Ex. B at 229-30. Therefore, the record also refutes Sanchez's claim of deficient performance. For the above stated reasons, relief on the claim in Ground Three is due to be denied.

### D. Ground Four

Sanchez asserts that his trial counsel was ineffective for failing to preserve Sanchez's speedy trial rights. Petition at 17-19. According to Sanchez, his first attorney, Greg Messore, filed a demand for a speedy trial; however, once James Nolan became his attorney, Nolan agreed to a continuance, thus waiving his speedy trial rights, without Sanchez's consent. Id. at 17. Sanchez contends that Nolan's decision to waive his speedy trial rights prejudiced him for the following reasons: (1) it precluded his discharge; (2) it allowed the State additional time to prepare its case; (3) it allowed the State to negotiate a deal with Sanchez's co-defendant to testify against Sanchez at his trial; (4) it created a conflict of interest between Sanchez and Nolan; and (5) it precluded Sanchez from raising on appeal issues with his speedy trial rights. Id.

Sanchez alleged a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 5-9. In denying this claim, the circuit court explained:

> In Ground Two, Defendant alleges that his counsel was ineffective for failing to invoke and preserve Defendant's speedy trial rights. The Court adopts and incorporates the State's Response to Ground Two. Barnes v. State, 38 So. 3d 218, 219-20 (Fla. 2d DCA 2010); see e.g., German v. State, 596 So. 2d 509, 509 (Fla. 1st DCA 1992).
>
> It is well-settled law in Florida that a defense motion for continuance made during the speedy trial time period waives the speedy trial rule, even if the motion for continuance is

made by counsel over a defendant's protestations. <u>State v. Riechmann</u>, 777 So. 2d 342, 365 (Fla. 2000); <u>Randall v. State</u>, 938 So. 2d 542, 544 (Fla. 1st DCA 2006). In Ground Two, the Court can find no deficient performance by Mr. Nolan because, as explained in the State's Response, Mr. Nolan had good reason to continue the case and waive the speedy trial rule. The Court summarily denies Ground Two.

Resp. Ex. Y at 7 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, Sanchez's claim in Ground Four is meritless. Florida Rule of Criminal Procedure 3.191 governs a defendant's right to speedy trial in the Florida criminal judicial system. Pursuant to Rule 3.191(a), the state shall bring a defendant charged with a felony to trial within 175 days. "This right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." <u>Dillard v. Sec'y Dep't of Corr.</u>, 440 F. App'x 817, 819 (11th Cir. 2011) (citing <u>State v. Nelson</u>, 26 So. 3d 570, 574 (Fla. 2010)).

Notably, "[under Florida law,] a waiver of speedy trial by counsel is binding on the defendant, 'even though done without consulting him and even against the client's wishes.'" Dillard, 440 F. App'x at 820 (quoting State v. Kruger, 615 So.2d 757, 759 (Fla. 4th DCA 1993)); see also New York v. Hill, 528 U.S. 110, 115 (2000) (holding that defense counsel could waive defendant's right to be brought to trial within the 180-day period specified under the Interstate Agreement on Detainers, by agreeing to a trial date outside that period, even without the express consent of defendant). Moreover, "'[a] claim of ineffective assistance of counsel based on a failure to seek discharge because of a violation of the speedy trial rule is extremely tenuous where the State had available the recapture window of Rule 3.191(p)(3),' which was added in 1985 to give 'the system a chance to remedy a mistake.'" Remak v. State, 142 So. 3d 3, 6 (Fla. 2d DCA 2014) (quoting Hammond v. State, 34 So. 3d 58, 60 (Fla. 4th DCA 2010); Florida Bar Re: Amend to Rules-Criminal Procedure, 462 So. 2d 386 (Fla. 1984)).

The record reflects that contrary to Sanchez's assertions otherwise Messore did not file a demand for speedy trial. Resp. Ex. A. Additionally, on July 31, 2008, within the 175-day speedy trial period, attorney Nolan orally moved for a continuance, which the circuit court granted, thus waiving Sanchez's speedy trial rights. Id. at 18. Sanchez's claim that counsel waived his speedy trial rights over his objection fails because under Florida law, counsel had the right to waive speedy trial without consulting Sanchez and over Sanchez's objection. See Dillard, 440 F. App'x at 820. Moreover, Sanchez cannot demonstrate prejudice because he does not provide any support for the conclusion that the State would not have been able to bring him to trial during the recapture period. See Remak, 142 So. 3d at 6. As such, his claim of prejudice is wholly speculative and

insufficient to warrant federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Accordingly, relief on Sanchez's claim in Ground Four is due to be denied.

### E. Ground Five

In Ground Five, Sanchez argues that his trial counsel was ineffective for failing to adopt his pro se motion to suppress evidence obtained following the search and seizure of his vehicle. Petition at 20-22. According to Sanchez, the officers who stopped his vehicle unnecessarily prolonged his detention prior to arrest and lied about receiving consent from Sanchez to search the vehicle. Id. at 21. Sanchez contends that he did not consent to a search and his co-defendant would have been able to corroborate his allegations. Id.

Sanchez alleged a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 9-11. The circuit court denied this claim, stating:

> In Ground Three, Defendant alleges that he received ineffective assistance of counsel due to counsel's failure to adopt his *pro se* motion to suppress evidence obtained in a search of his car. Defendant claims that the initial stop of his vehicle was illegal and that he did not consent to a search of his car. The Court adopts and incorporates the State's Response to Ground Three with respect to the factual determinations made therein. The Court notes that Mr. Nolan repeatedly represented to the Court that Defendant's motion to suppress was legally insufficient and declined to make the motions.
>
> (i)     Traffic Stop
>
> Officer Chad James testified during the trial that he stopped Defendant's vehicle because the license plate tag was registered to a different vehicle. Such a discrepancy is a valid reason for a law enforcement officer to conduct a traffic

stop. <u>Gomez v. State</u>, 748 So. 2d 352, 352 (Fla. 3d DCA 1999), <u>reh'g denied</u> (Feb 09, 2000), <u>review dismissed</u>, 762 So.2d 916 (Fla.2000) [sic]; <u>Heller v. State</u>, 576 So. 2d 398, 399 (Fla. 5th DCA 1991). Therefore, Defendant's motion to suppress based upon the illegality of the traffic stop is meritless, and Mr. Nolan was not deficient for failing to make such a motion. <u>See</u> <u>State v. Lugo</u>, 2 So. 3d 1, 21 (Fla. 2008).

(ii)     Consent for the Search

In Ground Three, Defendant also alleges that Mr. Nolan should have filed a motion to suppress because Defendant claims that he did not consent to the search. Defendant further alleges that his co-defendant Steven Lawton Jarrell, III, corroborated Defendant's story that there was no consent for the search. This subsection is denied because Defendant fails to demonstrate prejudice under <u>Strickland</u>, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The second prong of the ineffective assistance of counsel test focuses on whether the results of the proceeding are reliable. <u>Stephens v. State</u>, 748 So. 2d 1028, 1034 (Fla. 1999).

During the trial, Officer James testified that when he conducted the traffic stop, Defendant consented to the search of his vehicle. In Defendant's vehicle, Officer James discovered a BB gun, an iPod, some foreign currency that he believed was from Mexico, a knife, and a latex glove.

Assuming Mr. Nolan had filed a motion to suppress, and assuming that the Court granted the motion, the jury still had overwhelming evidence – even without the items obtained from the vehicle – to find Defendant guilty. The victim, Ms. Pate, testified that Defendant was the person who attempted to rob her with a gun, and she positively identified Defendant from a photo lineup. Co-defendant Mr. Jarrell testified that he and Defendant attempted to rob the victim. In addition, Defendant testified at trial, and the jury had the opportunity to consider Defendant's version of events.

Further, none of the items from Defendant's vehicle directly link Defendant to the attempted robbery:  Ms. Pate testified that a revolver, not a BB gun or knife, was used in the attempted robbery, nothing was stolen from Ms. Pate so the

iPod and currency are irrelevant to the crime, and the attempted robbery did not involve a latex glove, either.

The Court finds that Defendant failed to demonstrate that he was prejudiced by Mr. Nolan's failure to file a motion to suppress based upon the theory of consent.

Ground Three is summarily denied in it [sic] entirety.

Resp. Ex. Y at 8-9 (record citations omitted). The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Five is without merit. The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second guessing of attorney performance are not permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). The Eleventh Circuit has explained that:

Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision

concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). The record reflects counsel informed the circuit court that he did not adopt the motions because he found them to be legally insufficient. Resp. Ex. B at 190-91, 212-13. The Court finds counsel's strategic decision reasonable in light of the following evidence which was presented at trial.

Concerning the traffic stop, Officer Chad James testified that he stopped Sanchez's vehicle because the license plate affixed to the vehicle was registered to a different car. Resp. Ex. D at 208. Notably, Sanchez testified that he informed the officer that he had just recently purchased the vehicle and was unable to afford to change the registration. Id. at 254-55. Failing to have the properly registered license plate on a vehicle is a violation of Florida law that constitutes a lawful reason for conducting a traffic stop. See Heller, 576 So. 2d at 399. Accordingly, there would have been no legal basis for counsel to have filed a motion to suppress on the grounds that the stop was illegal, particularly because Sanchez admitted that the vehicle was not properly registered. Id. Counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

As it relates to the issue of consent, James testified that Sanchez consented to the search of his vehicle. Resp. Ex. D at 210. However, Sanchez testified he did not consent to search the vehicle. Id. at 250, 254-55. Based on this conflicting testimony, credibility would have been a critical issue at any suppression hearing. Sanchez contends that

Jarrell would have corroborated his testimony, but he offers no evidence in support of this conclusory allegation. See Petition; Reply. As previously discussed, speculation and conclusory allegations cannot form the basis of an ineffective assistance of counsel claim. See Tejada, 941 F.2d at 1559. Notably, Jarrell did not give testimony at trial regarding whether Sanchez gave consent to the search or not. Resp. Ex. C at 179-97. Jarrell did testify that he had a drug problem, a felony conviction arising from a guilty plea for his role in this incident, and had a prior conviction for a crime of dishonesty. Id. at 179-80. Likewise, Sanchez had one prior felony conviction. Resp. Ex. D at 272. Accordingly, even assuming Jarrell would have testified as Sanchez alleges, both Sanchez and Jarrell's credibility would have been a serious issue hindering the success of a motion to suppress. Based on this evidence, the Court finds counsel's strategic determination not to file a motion to suppress was reasonable. Therefore, Sanchez is not entitled to relief on this claim. See Provenzano, 148 F.3d at 1330; Spaziano, 36 F.3d at 1039.

Moreover, Sanchez cannot demonstrate prejudice because even if counsel successfully suppressed evidence from the stop, there is no reasonable probability the outcome of the trial would have been different given the remaining competent, substantial evidence presented at trial. The victim, Monica Pate, testified that on February 21, 2008, at approximately 9:30 p.m., she was walking from the local grocery store to her apartment when two men exited a vehicle and approached her. Resp. Ex. C at 144-47. One of the men, Sanchez, pointed a gun at her neck and began to grope her body while searching for money. Id. at 145, 148-51. However, Sanchez did not find any money and eventually left the scene. Id. at 151-52. After the two men left, Pate called 911 and gave a description of the assailants to the dispatcher. Id. at 157-60. Pate made an in-court identification of

Sanchez as the man who pointed the gun at her. Id. at 145-46. Sanchez did not have a mask on his face and Pate was able to closely observe Sanchez's features because they were face to face. Id. at 145, 147-50. After the incident, law enforcement presented her with a photo line-up. Resp. Exs. C at 152-53; D at 219-22. Pate was unable to identify the other individual, but she positively identified Sanchez as the assailant. Resp. Exs. C at 152-56; D at 221-22. Sanchez's co-defendant, Steve Jarrell, testified at trial that he and Sanchez attempted to rob Pate because they wanted money for drugs. Resp. Ex. C at 183. Jarrell's testimony corroborated Pate's testimony that Sanchez pointed a gun, which unbeknownst to Pate actually was a BB gun, at Pate and searched her unsuccessfully for money. Id. at 184-191, 193. Based on this competent, substantial evidence, which was not related to evidence secured from the search and seizure of Sanchez's vehicle, there is no reasonable probability the outcome of the trial would have been different had counsel successfully suppressed evidence obtained from the search of Sanchez's car. Sanchez has failed to demonstrate deficient performance or prejudice; therefore, his claim in Ground Five is due to be denied.

## F. Ground Six

Sanchez contends that his trial counsel was ineffective because he failed to object to allegedly improper comments and questions the prosecutor made during trial. Petition at 24-28. Specifically, he asserts the prosecutor made the following improper comments: (1) suggesting Sanchez committed another uncharged crime; (2) introducing unduly prejudicial evidence of collateral crimes; (3) arguing about evidence not presented at trial; (4) bolstering the credibility of witnesses by stating they had no interest in the case; (5) misstating the law; (6) disparaging the defense; (7) giving personal opinions as to the

"justness of the case;" (8) personally attacking Sanchez; (9) insinuating Sanchez and his attorney were lying and voicing a personal belief that Sanchez is guilty; (10) leading witnesses; and (11) shifting the burden. Id. at 25-26.

Sanchez raised this claim as ground five of his Amended Rule 3.850 Motion. Resp. Ex. N at 14-18. The circuit court denied this claim, explaining:

(i)     Ms. Pate's Testimony

The Court adopts and incorporates section (i) of the State's Response that finds Defendant's allegations conclusively refuted by the record and ruled upon by the Court in a <u>Nelson</u> hearing held on May 15, 2009. Based upon the State's analysis in section (i), the Court summarily denies Defendant's claims of ineffective assistance of counsel for Mr. Nolan's alleged failure to object to leading questions during the direct examination of Ms. Pate.

Defendant also alleges that Ms. Pate gave testimony that conflicted with Detective Butler, and Mr. Nolan was ineffective for failing to point out any inconsistencies in testimonies regarding the photo line-up and victim statements. In fact, Mr. Nolan did point out during closing arguments that Ms. Pate and Officer Butler were inconsistent as to the date of the photo line-up. Further, Mr. Nolan questioned Ms. Pate as to what exactly she was doing when she was approached by Defendant and co-defendant Mr. Jarrell. Ms. Pate testified that she was returning *from* the grocery store, and Mr. Nolan impeached Ms. Pate with her deposition transcript wherein she stated that she was going *to* the grocery store.

Because Defendant's allegations are conclusively refuted by the record and Defendant can show no deficient performance by Mr. Nolan during Ms. Pate's trial testimony, the Court summarily denies section (i) of Ground Five.

(ii)    Mr. Jarrell's Testimony

Defendant avers that Mr. Nolan should have objected during co-defendant Mr. Jarrell's trial testimony because the State improperly questioned Mr. Jarrell about collateral crimes committed by Defendant and because Mr. Jarrell gave

inadmissible hearsay testimony in response. The State questioned Mr. Jarrell:

> State: And what was – what was the intent that day? Did you guys discuss in the car or what did you and Mr. Sanchez both know was about to happen?

> Mr. Jarrell: We were looking for money for drugs and so we were – we were looking for people that could possibly give us money for drugs.

The Court finds no error in the State's question to Mr. Jarrell regarding Defendant's motive for the attempted armed robbery. Mr. Jarrell's response was not hearsay; that is, a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801, Fla. Stat. (2008); Powell v. State, 99 So. 3d 570, 573 (Fla. 1st DCA 2012). Mr. Jarrell was not testifying about an out-of-court statement. Even if Mr. Jarrell's testimony could be considered hearsay, such testimony would be an exception to the hearsay rule as an admission by Defendant, because he was testifying to the out-of-court actions and statements of Defendant. § 90.803, Fla. Stat. (2008); Delacruz v. State, 734 So. 2d 1116, 1122 (Fla. 1st DCA 1999).

Mr. Jarrell testified that Defendant was looking for drugs, testimony that could be considered collateral crime evidence. However, evidence of other crimes that are factually dissimilar to the charged crime is admissible if relevant, such as when it establishes a motive. § 90.404, Fla. Stat. (2008); [Floyd v. State], 913 So. 2d 564, 572 (Fla. 2005). Here, seeking drugs is a crime that is factually dissimilar to armed robbery, and Mr. Jarrell's testimony established the pair's motive that night.

Mr. Nolan had no legal basis for objecting to the aforementioned questions or statements during the trial testimony of Mr. Jarrell. Defendant fails to show any deficient performance by Mr. Nolan in section (ii), and therefore, the Court summarily denies section (ii) of Ground Five.

(iii)    Defendant's Testimony

Defendant avers that Mr. Nolan failed to object when the prosecutor asked Defendant questions about evidence that was not in the record: latex gloves, Mexican pesos, and knives. This allegation is refuted by the record.

Prior to Defendant's testimony, Officer Chad James testified about the night that he stopped Defendant's vehicle. Officer James testified that he took items from Defendant's car into evidence, including some Mexican pesos. During cross examination, Mr. Nolan objected when the State attempted to ask more about the Mexican pesos; however, the objection was overruled because testimony about the pesos was already in the record.

Officer James also testified regarding State's Exhibit 5, a photograph of the interior of Defendant's car that depicted what he found on the floorboard of the passenger side: latex gloves, a knife, and a BB gun. Therefore, the Court finds that Mr. Nolan was not deficient in failing to object to the State's questioning Defendant about these items because Officer James had already testified about these items.

Defendant also complains that the State suggested that there was more evidence than just what was introduced at trial by asking Defendant, "So all the stuff was just friends' and other people's, it was all in your car, correct?" and "All the stuff in the car all belonged to other people, but it was your car?" The Court finds nothing legally wrong with these questions, and, therefore, Mr. Nolan was not deficient in failing to object to them.

Finally, Defendant alleges that Mr. Nolan was deficient for failing to object when the State asked him the questions, "So, your lawyer is not doing a good job?" The Court finds that Mr. Nolan objected three times to this line of questioning, and three times the Court overruled his objections. Therefore, the Court finds no deficient performance by Mr. Nolan. The Court summarily denies section (iii) of Ground Five.

(iv)     State's Closing Arguments

In this section, Defendant complains that Mr. Nolan failed to object to several comments by the prosecutor during closing arguments. Specifically, Defendant claims that the prosecutor made personal attacks against Mr. Nolan, ridiculed

the defense theory, gave personal opinions, and misstated the law.

. . . .

The Court adopts and incorporates the State's response to section (iv), and based upon that analysis, finds no error with the prosecutor's comments, no error with Mr. Nolan's failure to object, and no prejudice to Defendant. The Court finds that the State Attorney's comments would not have constituted reversible error even if they had been objected to at trial because they reflect the State's theory of what happened in the case. Gordon v. State, 863 So.2d 1215, 1220 (Fla. 2003) [sic]. Defense Counsel cannot be found to be ineffective in failing to object to proper comments, thus Defendant fails to prove the first prong of Strickland. Therefore, the Court summarily denies section (iv) of Ground Five.

(v)      Cumulative Effect of Prosecutorial Misconduct

The Court adopts and incorporates the State's response in section (v). The Court finds that Mr. Nolan was not deficient in handling the prosecutorial comments and questions alleged in Ground Five; therefore, Defendant's arguments regarding any cumulative effect of such comments are moot.

(vi)      Failure to Preserve Issues for Appeal

In regards to Defendant's argument that counsel was ineffective because Mr. Nolan failed to preserve issues for appellate review, the Court finds Defendant is not entitled to relief. "[F]ailure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). In Strobridge, the appellate court found "the only prejudice asserted was prejudice in the [defense attorney's] failure to preserve the issue for appeal and not any prejudice occurring at the trial itself. Id. at 1243. See Carattelli v. State, 961 So. 2d 312, 323 (Fla. 2007) (holding defendant must demonstrate prejudice at trial, not on appeal[).] The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding *whose result is being challenged*." Strickland, 466 U.S. at 670 (emphasis added). Defendant's argument does not challenge the result of his conviction, but instead addresses the effect counsel's

performance had on an appeal. Thus, Defendant does not demonstrate prejudice at trial, and he is not entitled to relief.

Therefore, Ground Five, in its entirety, is summarily denied.

Resp. Ex. Y at 9-15 (record citations omitted). The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Six is meritless. Having independently reviewed the trial transcript, the Court agrees with the circuit court's analysis that none of the prosecutor's questions or comments were improper in light of the evidence presented at trial and the context in which the questions and statements were made. The Court need not review in detail each question and comment, because the Court has determined Sanchez cannot demonstrate prejudice. See Ward, 592 F.3d at 1163 (noting that "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."). The State presented substantial evidence of Sanchez's guilt. The victim closely observed Sanchez and unequivocally and immediately picked Sanchez out of a

photo line-up. Resp. Exs. C at 152-56; D at 221-22. Sanchez's co-defendant confessed to the crime and detailed Sanchez's involvement, which corroborated the victim's testimony. Resp. Ex. C at 183-191, 193. Accordingly, even assuming every question and comment Sanchez complains of in Ground Six was not stated at trial, there is no reasonable probability the outcome of the trial would have been different in light of the substantial evidence of Sanchez's guilt. As Sanchez cannot demonstrate prejudice, relief on his claim in Ground Six is due to be denied. See Ward, 592 F.3d at 1163.

### G. Ground Seven

As Ground Seven, Sanchez avers that trial counsel was ineffective because he failed to adequately argue a motion for judgment of acquittal. Petition at 30-31. According to Sanchez, counsel should have argued the BB gun did not constitute a deadly weapon under the robbery statute. Id. at 30. Sanchez asserts that the State failed to introduce any evidence of the BB gun's operability or the type of injury it might inflict, which he claims is required under Florida law when a BB gun is found unloaded and introduced into evidence. Id.

Sanchez alleged a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 18-19. In denying this claim, the circuit court stated in pertinent part:

> The State had to prove that Defendant attempted to rob Ms. Pate, using a deadly weapon. Accepting all facts presented by the State, the trial court had in front of it a multitude of evidence, including the victim's testimony that Defendant was the person who attempted to rob her with a gun, co-defendant Mr. Jarrell's testimony that he and Defendant attempted to rob the victim, Officer James' testimony regarding the BB gun found in Defendant's car, and Officer Butler's testimony about the victim picking Defendant out of a photo line-up. There is no reasonable probability that a judgment of acquittal would have been granted regardless of whether trial counsel presented the motion more artfully.

Consequently, Defendant is not entitled to relief on this ground.

Furthermore, Defendant is incorrect that the BB gun cannot be considered a deadly weapon. Whether a BB gun is a "deadly weapon" – even if inoperable, unloaded, or incapable of inflicting death or great bodily harm – is a question of fact to be determined by the jury. Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997) (holding that an unloaded BB gun was found by the jury to be a "deadly weapon"); Mitchell v. State, 698 So. 2d 555, 562 (Fla. 2d DCA 1997), approved, 703 So. 2d 1062 (Fla. 1997) (after thorough analysis of BB guns as deadly weapons, concluding that the assessment of the likelihood of injury is from a reasonable victim's perspective). The jury's finding will not be overturned as long as it is supported by competent, substantial evidence. Dale, 703 So. 2d at 1047.

Here, there was competent and substantial evidence to support the jury's finding that the BB gun was a deadly weapon. The victim did not know that the "gun" that was held to her neck by Defendant was inoperable. Ms. Pate testified that she believed that the gun was a revolver. Through his own actions during the robbery, Defendant implied that the gun was loaded and operable. Therefore, the evidence that a reasonable victim would have thought that Defendant used a deadly weapon during the attempted robbery is competent and sufficient to support the jury's finding.

In regards to Defendant's argument that counsel was ineffective because he failed to preserve any issues for appeal, the Court incorporates the argument in Ground Five on this matter and finds that Defendant has failed to substantiate his claim of prejudice. Ground Six, in its entirety, is summarily denied.

Resp. Ex. Y at 15-17 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, there is no merit to the claim raised in Ground Seven. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991)) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). The Florida Supreme Court has explained:

> Section 812.13, Florida Statutes (1995), defines the crime of robbery, and provides in relevant part:
>
> (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in [the penalty statutes].
>
> (b) If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree, punishable as provided in [the penalty statutes].

(c) If in the course of committing the robbery the offender carried no firearm, deadly weapon, or other weapon, then the robbery is a felony of the second degree, punishable as provided in [the penalty statutes].

§ 812.13, Fla. Stat. (1995).

Although section 812.13 fails to define the terms "firearm" and "weapon," the definitions for these terms contained in the Florida Standard Jury Instructions are a correct statement of the law:

A "firearm" is legally defined as (adapt from F.S. 790.001 as required by allegations).[2]
.  .  .  .

A "weapon" is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.

Fla. Std. Jury Instr. (Crim.) 156(a). Whether a particular "weapon" is in fact deadly is a jury question:

A "deadly weapon" has generally been defined to be one likely to produce death or great bodily injury. Whether or not the weapon involved is to be classed as "deadly" is a factual question to be resolved by the jury under appropriate instructions.

Goswick v. State, 143 So.2d 817, 820 (Fla.1962), receded from on other grounds, State v. Smith, 240 So.2d 807 (Fla.1970).

The issue posed here is whether the "deadliness" of a BB gun is properly a jury question, or whether a BB gun is so innocuous that it is always a non-deadly weapon as a matter of law. Our review of pertinent caselaw reveals that Florida's district courts have overwhelmingly concluded that a BB or pellet gun can be a deadly weapon, and that the issue of "deadliness" is a jury question. We agree with the district courts and hold that whether a BB or pellet gun is a deadly weapon-i.e., whether it is "likely to produce death or great bodily injury"-is a factual question to be answered by the jury in each case. Goswick, 143 So. 2d at 820. The jury's finding

37

will be sustained on review if supported by competent substantial evidence.

_Dale_, 703 So. 2d at 1046-47 (footnotes excluded). Notably, the failure to present evidence that a BB gun was loaded or operable is not dispositive as to the issue of whether a BB gun is a deadly weapon. _Santiago v. State_, 900 So. 2d 710, 711 (Fla. 3d DCA 2005). "However, if the weapon is not introduced at trial where it may be inspected and tested by the jury or if the evidence introduced is that the gun was _inoperable_, then a finding that the weapon is a deadly weapon will not be sustained." _Id._ (emphasis in original).

As an initial matter, the Court notes that the circuit court found in its order denying Sanchez's Amended Rule 3.850 Motion that there was competent, substantial evidence to support the jury's finding that the BB gun constituted a deadly weapon under Florida law. Accordingly, the Court must accept the circuit court's determination that the BB gun was a deadly weapon pursuant to Florida law. _See_ _Estelle_, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The record also supports the State court's conclusion, as it reflects that the victim believed Sanchez had a real firearm pointed at her neck and she believed Sanchez was going to kill her. Resp. Ex. C at 147-48, 158, 160-61, 168-69, 176-77. Indeed, photographs of the BB gun introduced at trial support the victim's belief that the BB gun looked real. Resp. Ex. A at 80-81. Jarrell's testimony at trial corroborates the victim's testimony that Sanchez acted and used the BB gun in such a way as to give the appearance that it was an actual gun. Resp. Ex. C at 183-191, 193. Jarrell testified that Sanchez told him that he purchased the BB gun from Wal-Mart. _Id._ at 187. Jarrell gave the following description of the BB gun: "[i]t's a black and silver BB gun and it has – the barrel of it is black and it's broken also so the front piece of it where there would normally

be a piece on the barrel, there's no pieces there." Id. at 190. The State introduced the BB gun into evidence and after Jarrell examined it on the stand, he stated, "[t]hat is the BB gun that we used and the part that I'm talking about is broken is this up here. This would normally have a piece shielding over the top of it." Id. Notably, Sanchez testified that the BB gun was not his but belonged to a friend who was "playing with" the BB gun while Sanchez was cleaning his car and left it in the car. Resp. Ex. D at 253-54. Sanchez further testified that prior to the incident an officer conducted a traffic stop of his vehicle and thought the BB gun was real enough to examine it during the stop. Id. at 254. According to Sanchez, the officer stated the BB gun was broken but he did not specify in what manner. Id.

Here, the BB gun was introduced into evidence and Sanchez utilized it in a manner to suggest to the victim that it was loaded and capable of inflicting great bodily injury. To the extent Sanchez argues its broken, Jarrell's testimony reveals that a portion of the BB gun was broken off, not that it was inoperable, and pictures of the BB gun do not reveal any obvious defects. No other testimony indicates the BB gun was inoperable. When viewing this evidence in a light most favorable to the State, there is no reasonable probability the circuit court would have granted a motion for judgment of acquittal on this issue. See Jackson, 443 U.S. at 319; Dale, 703 So. 2d at 1046-47; Santiago, 900 So. 2d at 711. In light of this conclusion, counsel cannot be found ineffective for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, for the above stated reasons, relief on the claim in Ground Seven is due to be denied.

## H. Ground Eight

Sanchez asserts that his trial counsel was ineffective for failing to object to an incomplete, misleading, and confusing jury instruction on the definition of a deadly weapon. Petition at 33-34. According to Sanchez, the instruction should have specifically included the term "BB gun" as the weapon used in this case. Id. at 33. Additionally, Sanchez contends that "[t]he jury was never instructed as to how to evaluate the broken BB gun as a potential deadly weapon based on the law, the facts of the case or petitioner's actions, which can only be considered if petitioner used the device as a club or bludgeon (inflict bodily harm or death) and not on the subjective intent of [the] perpetrator or subjective fear of [the] victim." Id.

Sanchez alleged a similar claim as ground seven of his Amended Rule 3.850 Motion. Resp. Ex. N at 19-20. In denying this claim, the circuit court explained:

> In Ground Seven, Defendant alleges that he received ineffective assistance of counsel because Mr. Nolan failed to object to an improper jury instruction that stated that a broken BB gun could be a deadly weapon. The Court adopts and incorporates the State's Response to Ground Seven. In addition, as analyzed under Ground Six, whether an inoperable BB gun is considered a deadly weapon is a question for the jury. Therefore, the Court finds that Mr. Nolan was not deficient in failing to object to the jury instruction. The Court summarily denies Ground Seven.

Resp. Ex. Y at 18. The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Eight is meritless. The Florida Supreme Court has held that "[a]lthough section 812.13 [the robbery statute] fails to define the terms 'firearm' and 'weapon,' the definitions for these terms contained in the Florida Standard Jury Instructions are a correct statement of the law." Dale, 703 So. 2d at 1046. Notably, as stated above, Dale concerned the issue of whether or not a BB gun constituted a deadly weapon. Id. Accordingly, as the Florida Supreme Court has determined that the standard jury instruction is legally sufficient in cases involving a BB gun, the Court finds any objection to the standard instruction given here would have been meritless. Counsel cannot be deemed deficient for failing to raise a meritless issue; therefore, Sanchez has failed to demonstrate deficient performance. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. To the extent Sanchez claims the jury was never given direction as to "how to evaluate" the BB gun as a deadly weapon, such direction is a matter better suited for closing argument as that is when the attorneys are tasked with arguing the facts in relation to the law. See United States v. Siegel, 587 F.2d 721, 726 (5th Cir. 1979) (stating that "the purpose of closing arguments is to assist the jury in analyzing, evaluating and applying the evidence."). For the above stated reasons, relief on Sanchez's claim in Ground Eight is due to be denied.

## I. Ground Nine

Sanchez contends that his trial counsel was ineffective because he failed to present certain exculpatory evidence that would have supported a misidentification defense. Petition at 36-38. Specifically, Sanchez maintains counsel should have impeached the victim with her deposition testimony in which she failed to identify Sanchez's car and the damage to the vehicle. Id. at 37. Additionally, Sanchez alleges the previous owner of his vehicle would have been able to testify that the damage to his vehicle occurred prior to Sanchez assuming ownership of the car. Id. at 36-37. According to Sanchez, had counsel impeached the witness in this manner and presented evidence of the car's damage at trial, the outcome of the proceeding would have been different. Id. at 37.

Respondents contend that this claim is unexhausted because Sanchez did not present the claim in this context to the state court. Response at 29. Sanchez counters that he did exhaust this claim. Reply at 20. The record reflects that Sanchez raised a similar claim as ground eight of his Amended Rule 3.850 Motion. Resp. Ex. N at 20-21. In the Amended Rule 3.850 Motion, he alleged his counsel failed to impeach the victim regarding her knowledge of whether Sanchez's vehicle was damaged and also mentioned counsel's failure to call the car's previous owner as a witness. Id. Although the allegations are not word for word similar, Sanchez did present the substance of the instant claim to the state court in his Amended Rule 3.850 Motion. Therefore, the Court finds Sanchez did exhaust this claim.

Turning to the issue of deference, the circuit court denied this claim, stating:

> The Court adopts and incorporates the State's Response to Ground Eight. Mr. Nolan addressed the theory

> of misidentification of Defendant and the vehicle during the cross examination of Ms. Pate, and he impeached Ms. Pate with prior statements. The Defense theory of misidentification was also presented to the jury during closing argument. During a <u>Nelson</u> hearing prior to the start of trial, Mr. Nolan testified as to why he did not call Ms. Cruz as a witness. Defendant's allegations are refuted by the record, and the Court summarily denies Ground Eight.

Resp. Ex. Y at 18 (record citations omitted). The First DCA per curiam affirmed the denial without a written opinion.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, this claim is without merit because Sanchez cannot demonstrate prejudice. Attached to Sanchez's Reply as an exhibit is a portion of the victim's deposition in which defense counsel asks her if she saw any damage to the car at all. Reply Ex. F at 19. The victim replied, "[o]nly thing I remember is the tinted windows." <u>Id.</u> This testimony reflects that the victim had no memory of damage, not that she did not see any damage. Therefore, there would have been no basis to impeach her on this matter. Moreover, whether there was damage to Sanchez's vehicle is irrelevant to this case. The victim was certain about Sanchez's identity and was face-to-face with Sanchez for a prolonged

period of time. Resp. Ex. C at 145, 147-50. The victim, without hesitation, positively identified Sanchez in a photo line-up. Resp. Exs. C at 152-56; D at 221-22. Sanchez's co-defendant, Jarrell, confessed at trial that he and Sanchez attempted to rob Pate, corroborating the victim's testimony. Resp. Ex. C at 183-191, 193. Based on this overwhelming evidence, there is no reasonable probability the outcome of the trial would have been different had counsel put on evidence concerning damage to Sanchez's vehicle, particularly in light of the fact the victim did not give a description of the vehicle at trial. Id. at 143-73. As Sanchez cannot demonstrate prejudice, relief on his claim in Ground Nine is due to be denied.

### J. Ground Ten

In Ground Ten, Sanchez asserts that trial counsel was ineffective for failing to investigate and impeach the victim and Jarrell with their prior convictions and to impeach Butler with evidence that he had been demoted. Petition at 39-41. According to Sanchez, the victim's deposition established that she had been convicted of a crime of dishonesty; however, counsel failed to address it during cross-examination. Id. at 40. Regarding Jarrell, Sanchez contends that Jarrell had a more extensive prior record involving crimes of dishonesty than the single conviction that Jarrell testified about at trial. Id. As to Butler, Sanchez claims that Butler "was removed [from] his unit because of misconduct and dishonesty as a detective (contrary to his testimony at trial)." Id.

Sanchez alleged a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 22-23. In denying this claim, the circuit court reasoned:

> As to the criminal history of Ms. Pate, the Court finds that this issue was addressed on May 15, 2009, during a <u>Nelson</u> hearing where Defendant made twenty-five allegations of ineffective assistance of counsel against Mr.

Nolan. Mr. Nolan testified that he researched the background of Ms. Pate. The Court finds that Mr. Nolan was not deficient in his investigation of Ms. Pate's prior criminal history.

For Mr. Jarrell, the Court finds that Defendant's allegations are refuted by the record. Mr. Jarrell was impeached with all admissible convictions.

As for Officer Butler, the Court finds no evidence in the record to support Defendant's allegation that Officer Butler was demoted due to misconduct. In fact, Officer Butler testified that he returned to patrol because he preferred an officer's work schedule over a detective's. Therefore, Mr. Nolan was not deficient in failing to impeach Officer Butler with Defendant's allegations.

The Court summarily denies Ground Nine.

Resp. Ex. Y at 19 (record citations omitted). The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, Sanchez's claim in Ground Ten is without merit. Pursuant to section 90.610, Florida Statutes (2008), "[a] party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the

crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment." A withhold of adjudication does not qualify as a conviction for purposes of section 90.610. McFadden v. State, 732 So. 2d 412, 413 (Fla. 3d DCA 1999).

The record refutes Sanchez's allegations concerning the prior records of the victim and Jarrell. During a Nelson hearing held on May 15, 2009, after trial, defense counsel made the following statements to the circuit court concerning the prior records of the victim and Jarrell:

> I did take the testimony of – the deposition of the co-defendant as well as the victim. We did our research, and the State and I had come to an agreement as to what the prior record was for purposes of trial. It was consistent with our investigation.
>
> . . . .
>
> [A]bout the victim's prior record, I think we've addressed those. However, we did a background check, FDLE search for Monica Pate.

Resp. Ex. B at 238-39. Counsel also made the following statement addressing Butler's position with the Jacksonville Sheriff's Office:

> [T]here was a detective who was no longer a detective, he was queried in his deposition why he was no longer a detective. He indicated that he enjoyed more days off and he gave excuses or reasons at his deposition why he was no longer a detective, and I did raise those with him. There was nothing to indicate that he was demoted or otherwise punished and removed from a detective.

Id. at 242-43.

As it relates to the victim, Sanchez attached to his Reply a copy of the docket for a misdemeanor case with Monica Lawonna Pate listed as the defendant. Reply Ex. G.

The docket printout reflects that Pate entered a plea of no contest to one count of filing a false police report and one count of contempt of court. Id. Notably, adjudication of guilt was withheld as to the false police report charge. Id. Even assuming the Monica Pate listed as the defendant in Sanchez's exhibit is the victim in this case, adjudication of guilt was withheld as to the filing of a false police report; therefore, counsel could not have used it at trial to impeach the victim. See McFadden, 732 So. 2d at 413. The contempt of court conviction was a misdemeanor and was not a crime of dishonesty or a false statement, as the docket reflects the contempt charge was added after Pate failed to appear; accordingly, counsel could not have utilized this conviction to impeach the victim either. See § 90.610, Fla. Stat. (2008).

Concerning Jarrell and Butler, other than Sanchez's conclusory allegations there is no evidence in support of Sanchez's claims here. As stated above, defense counsel testified he discovered nothing to indicate Jarrell had additional convictions or that Butler was demoted. Sanchez has not provided the Court with any evidence to rebut this testimony. Accordingly, Sanchez has failed to meet his burden to overcome the factual evidence provided in the record. See Blankenship v. Hall, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."); Tejada, 941 F.2d at 1559 (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). In light of the above, Sanchez has failed to demonstrate his allegations in Ground Ten would have been proper impeachment material. Counsel cannot be found deficient for failing to raise a meritless argument. See

<u>Diaz</u>, 402 F.3d at 1142; <u>Bolender</u>, 16 F.3d at 1573. For the above stated reasons, the relief Sanchez seeks in Ground Ten is due to be denied.

## K. Ground Eleven

Sanchez alleges that his trial counsel was ineffective because he failed to file a motion for new trial within the time limits prescribed by the Florida Rules of Criminal Procedure and that counsel should have provided more facts in the motion to establish that the verdict was contrary to the weight of the evidence. Petition at 43-44. Sanchez raised a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 30-32. In denying this claim, the circuit court stated:

> The Court adopts and incorporates the State's Response to Ground Twelve. Based upon the reasoning presented in the State Response, the Court finds that Defendant cannot prove the prejudice prong of <u>Strickland</u> because the Court considered Defendant's motion on the merits and denied it. <u>See</u> <u>Manley v. State</u>, 605 So. 2d 1327, 1328 (Fla. 2d DC 1992). The Court summarily denies Ground Twelve.

Resp. Ex. Y at 20 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, it is without merit. Pursuant to Florida Rule of Criminal Procedure 3.590(a), a motion for new trial in a noncapital case must be filed within ten days after the rendition of the verdict or the finding of the court. A motion for new trial shall be granted if, among other reasons, the circuit court determines the verdict is contrary to the weight of the evidence. Fla. R. Crim. P. 3.600(a)(2). "[T]he 'weight of the evidence' standard evaluates whether a greater amount of credible evidence supports an acquittal." Velloso v. State, 117 So. 3d 903, 905 (Fla. 4th DCA 2013).

Here, the verdict was rendered on April 1, 2009. Resp. Ex. A at 102. Counsel filed the motion for new trial on April 14, 2009. Id. at 103. Accordingly, the motion for new trial was untimely. See Fla. R. Crim. P. 3.590(a). However, the circuit court denied the motion on the merits even though it was untimely. Resp. Exs. A at 104; Y at 610. Accordingly, Sanchez cannot demonstrate prejudice as the circuit court did not reject the motion as untimely. To the extent Sanchez argues counsel should have argued the motion more adequately, the weight of the evidence against him does not support his assertion that the circuit court would have granted the motion. As noted above, two-eyewitnesses, the victim and Sanchez's co-defendant, both unequivocally identified Sanchez as the assailant. Other than Sanchez's own self-serving testimony there was no evidence to rebut the victim and Jarrell's testimony; therefore, the verdict was not contrary to the weight of the evidence. See Velloso, 117 So. 3d at 905. No matter how well argued the motion for new trial could have been, there is no reasonable probability the circuit court would have granted it. In light of Sanchez's failure to demonstrate prejudice, he is not entitled to relief on the claim in Ground Eleven.

## L. Ground Twelve

Lastly, Sanchez contends that his trial counsel was ineffective for failing to file a motion in limine to exclude the following evidence from trial: (1) Sanchez's vehicle; (2) the BB gun; (3) foreign currency; (4) Jarrell's testimony concerning consuming drugs with Sanchez; (5) leather jackets; (6) latex gloves; (7) a knife; and (8) the State's mentioning of the severed counts. Petition at 46-48. According to Sanchez, this evidence was irrelevant and unduly prejudicial because it introduced evidence of collateral and unrelated crimes. Id. at 46-47.

Sanchez alleged a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 32-34. The circuit court denied the claim, explaining:

> The Court adopts and incorporates the State's Response to Ground Thirteen. As analyzed by the State, the described motion in limine would have been meritless. Therefore, Defendant failed to show both deficient performance by Mr. Nolan and prejudice. The Court summarily denies Ground Thirteen.

Resp. Ex. Y at 20 (record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Ex. DD.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Sanchez is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, Sanchez's claim here is meritless. In reviewing the record, Sanchez's vehicle, the BB gun, and the leather jackets were all relevant to the case against him because the victim testified about seeing Sanchez exit the vehicle, wearing a leather jacket, and pointing a gun (which later turned out to be the BB gun) at her. Resp. Ex. C at 145, 147, 158, 160-61. Accordingly, this particular evidence was relevant to identifying Sanchez as the perpetrator. Jarrell's testimony concerning doing drugs with Sanchez was relevant to establish motive for the robbery as they committed the robbery in hopes of getting drug money. Id. at 183.  Regarding the foreign currency, knife, and latex gloves, the record reflects that counsel did object to testimony on these items; however, the circuit court overruled the objection because Sanchez gave testimony saying everything in the car did not belong to him. Resp. Ex. D at 259-60. Although not a motion in limine, the objection served as the functional equivalent because counsel attempted to exclude the State from introducing that evidence. As such, Sanchez cannot demonstrate prejudice.

As to Sanchez's allegations that the State alluded to the severed counts during trial, Sanchez has failed to cite which comments or questions he finds objectionable, thus, preventing the Court from adequately analyzing this claim. Therefore, Sanchez has failed to meet his burden and his conclusory allegations are insufficient to warrant habeas relief. See Blankenship, 542 F.3d at 1270; Tejada, 941 F.2d at 1559. To the extent Sanchez refers to the same portion of the transcript as cited in his Amended Rule 3.850 Motion, a

review of the relevant questions and statements reveals the prosecutor did not allude to the severed accounts. Resp. Ex. D at 258-60. The prosecutor's use of the phrase "this attempted armed robbery" does not necessarily indicate Sanchez was arrested on multiple offenses. Moreover, even assuming all this evidence was excluded, there is no reasonable probability the outcome of the trial would have been different because the victim and the co-defendant provided competent, substantial evidence as to Sanchez's role in the attempted robbery. Accordingly, Sanchez has failed to demonstrate deficient performance or prejudice; therefore, relief as to his claim in Ground Twelve is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Sanchez seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Sanchez "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Sanchez appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of April, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:    Simon Sanchez, #J38918
      Thomas Duffy, Esq.